IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LATOSHIA E. DONALD, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | |
| } | 2:14-cv-727-WMA |
| UAB HOSPITAL MANAGEMENT, LLC, } | |
| } | |
| Defendant. } | |

### MEMORANDUM OPINION AND ORDER

Before the court are the responses of plaintiff Latoshia Donald (Doc. 21) and defendant UAB Hospital Management, LLC ("UAB") (Doc. 23) to this court's order (Doc. 20) to show cause why Donald should not be required to dismiss some of her claims. For the reasons set forth below, Donald will be required to dismiss either her retaliation claim or her race discrimination claim.

### BACKGROUND[1]

Donald, an African-American, worked for UAB as a Registered Nurse from October 2012 until April 2013. (Doc. 1 at 2-3, ¶¶ 8, 10, 14). Donald alleges that she and other African-American coworkers were constantly subjected to "racially discriminatory comments and treatment." (Doc. 1 at 3, ¶ 11). On April 8, 2013, Donald and her coworkers complained to UAB's Human Resources department about this treatment and about UAB's solution, namely, simply to assign the

---

[1] To the extent the court draws factual inferences, they are drawn in favor of Donald. *See M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006).

complaining African-Americans to different shifts. (Doc. 1 at 3, ¶ 14). UAB terminated Donald during her next shift, saying that it was because of a patient complaint. Donald had no history of patient complaints, and no investigation was undertaken regarding this complaint. (Doc. 1 at 4, ¶¶ 17-18). Donald attempted to seek internal review of her termination, claiming that it was an act of discrimination, but UAB denied review based upon the fact that its policies did not permit her to obtain review when her supervisors were also African-American. (Doc. 1 at 4, ¶¶ 19-20).

Donald filed this action against UAB on April 21, 2014. In her complaint, she presents three claims of causes of action, all under Title VII: (1) discrimination, (2) hostile work environment, and (3) retaliation, all connected to her race. In her race discrimination claim, she alleges that she was terminated because of her race and was replaced by a Caucasian employee. In her hostile work environment claim, she alleges that the UAB work environment was racially hostile and negatively affected the terms, conditions, and privileges of her employment. In her retaliation claim, she alleges that she was terminated in retaliation for reporting the racial harassment and discrimination. (Doc. 1 at 5-6, ¶ 33).

On May 12, 2015, pursuant to the court's authority to order dismissal under Fed. R. Civ. P. 12(b)(6) *sua sponte* in appropriate circumstances, the court notified the parties of what it perceived

to be a jurisdictional problem and gave them an opportunity to respond. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). The court ordered Donald to show cause why she should not be required either to dismiss her retaliation claim or to dismiss her other claims and amend her retaliation claim to allege that retaliation was the "but-for" cause for the adverse employment action she complains of. Both parties have responded to the court's order.

## DISCUSSION

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was **the** but-for cause of the challenged employment action." 133 S. Ct. 2517, 2528 (2013) (emphasis added). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action . . . ." *Id.* at 2533. This court has consistently interpreted this requirement to mean that "[i]f a plaintiff wants to pursue a retaliation claim she must in her complaint 'indicate that retaliation was the "only," or "but-for" motive for her termination [and] must make it perfectly clear in her pleading that there are no proscribed motivations other than an intent to retaliate.'" *Savage v. Secure First Credit Union*, No. 2:14-cv-2468-WMA, 2015 WL 2169135, at *3 (N.D. Ala. May 8, 2015) (quoting *Montgomery v. Bd. of Trs. of the Univ. of Ala.*, No. 2:12-cv-2148-

WMA, 2015 WL 1893471, at *5 (N.D. Ala. Apr. 27, 2015)); *see also Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009) (ADEA); *Dixon v. Birmingham, Ala.*, No. 2:13-cv-404-WMA, 2015 WL 353162, at *1 (N.D. Ala. Jan. 27, 2015) (ADA). This court does not back away from what it said in *Savage*. This opinion is not only consistent with but lends further support to the *Savage* opinion.

Donald makes two arguments in support of her position that none of her claims should be dismissed. She first contends that her race discrimination and retaliation claims may co-exist, citing *Burrage v. United States*, 134 S. Ct. 881 (2014), which this court discussed at some length in *Savage*, 2015 WL 2169135, at *1-2. In *Burrage*, the Supreme Court dealt with the causation requirement in a criminal statute, but the Court, after finding the statute's plain meaning to require actual cause, applied the *Nassar* "but-for" standard in order to determine the parameters of the actual causation requirement. In elaborating upon the meaning of but-for causation, the Court said:

> Thus, "where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.

4

*Id.* at 888 (internal citations omitted).

From this language, Donald argues that her claims of race discrimination and retaliation are not mutually exclusive and can proceed in tandem, because the Supreme Court recognized that a cause can combine with underlying sub-factors and still be deemed the "but-for" cause. Donald reads these examples incorrectly. This becomes clear by looking at the context in which the Court was speaking. In *Burrage*, the defendant was convicted under the Controlled Substances Act for selling heroin to the victim. After ingesting the heroin, the victim died, triggering the inquiry at sentencing about enhancement, but no one could testify as to whether the heroin actually caused the victim's death or whether his death resulted from any of a number of other drugs in his system. *Id.* at 885-86. In discussing causation, the Supreme Court was principally concerned with whether the one drug — heroin — was the but-for cause of the victim's death. The point the Court was making is that, in each of these examples, there is only **one** but-for cause although other drugs or diseases could in some sense be considered actual causes, since all may have played some incremental part in causing the bad result. The Court only pointed to the straw that broke the camel's back, namely, the poison that was the single but-for cause of the death. Contrary to Donald's position, the Court was not making some larger point about the interplay and sufficiency of the various other factors. This court

cannot divine from *Burrage* the meaning Donald would give it.

The intent of the Supreme Court is made even more clear by what it said in the next paragraph of the *Burrage* opinion:

> Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter. It is beside the point that the victory also resulted from a host of other necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game. By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event. If the visiting team wound up winning 5 to 2 rather than 1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.

*Id.* at 888. Just as with the earlier examples, the Court's concern was with determining which of the acts is **the** but-for cause of the result — in this instance, whether the leadoff home run is the but-for cause of victory. The operative word is "the," which is a modifier for a single subject. Justice Scalia recognized that other factors arguably can be thought of as but-for causes, because without all of them the visiting team would not have won, but he pointed only to the leadoff home run as the single or but-for cause of victory. When considered with the previous examples, it is clear that the Court's intent was to provide examples of what is and what is not a but-for cause. It was not to make an entirely separate

point about the possible co-existence of **the** but-for cause and lesser theoretical causes. This court finds Donald's position untenable.

Justice Ginsburg's concurrence in the judgment in *Burrage* highlights Donald's mistake. Justices Ginsburg and Sotomayor declined to join the *Burrage* majority precisely because they "do not read 'because of' in the context of antidiscrimination laws to mean 'solely because of.'" *Id.* at 892 (Ginsburg, J., concurring in the judgment). If, as Donald reads *Burrage*, the majority opinion allows for multiple causes to exist under the Court's but-for standard, Justices Ginsburg and Sotomayor would not have had any reason to refuse to join the majority. They understood, as this court does, what the words "but for" mean.

This conclusion is further bolstered by the Supreme Court's description of the but-for standard in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). In *Gross*, the Court held: "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was **the** 'reason' that the employer decided to act." *Id.* at 176 (emphasis added). The Eleventh Circuit has elaborated this standard: "Because an ADEA plaintiff must establish 'but for' causality, no 'same decision' affirmative defense can exist: the employer either acted 'because of' the plaintiff's age or it did not." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). As this court

7

stated in *Savage*: "In other words, there can, in theory and in logic, be only one 'but-for' cause. The days of bushel-basket, mixed motivation are over if a plaintiff wants to claim retaliation . . . ." 2015 WL 2169135, at *3. If Donald wants to pursue mixed-motive claims of discrimination that include a claim or claims that can only be pursued if the proscribed motive is the "but for" cause, she needs to go to Congress like Lilly Ledbetter did and not depend on lower courts to straighten out the Supreme Court.

The court recognizes that other courts have disagreed with this court's interpretation of *Nassar,* based on at least one ground not raised by plaintiff in this case. Donald makes no contention that the Federal Rules of Civil Procedure allow her to plead inconsistent theories. This court is in the process of drafting an opinion in another case, *Thomas v. Kamtek, Inc.*, No. 2:14-cv-844-WMA, in which it will address this argument. Also, the Fourth Circuit has recently found that *Nassar* is inapplicable to claims brought under the *McDonnell-Douglas* framework. That court concludes that *Nassar* is inconsistent with the requirements of the prima facie stage and a but-for standard is already incorporated at the pretext stage. *Foster v. Univ. of Md.-E. Shore*, -- F.3d --, 2015 WL 2405266 (4th Cir. May 21, 2015). According to the Fourth Circuit, *Nassar* is only applicable to Title VII retaliation claims in cases in which the plaintiff elects to proceed by presenting direct evidence of retaliation. *Id*. at *4-*6.

This court respectfully but strongly disagrees with the Fourth Circuit and will adhere to its belief that *Nassar*'s but-for causation requirement applies "both ultimately and at the prima facie stage." *Montgomery*, 2015 WL 1893471, at *4; *see also Gautney v. Tenn. Valley Auth. Bd. of Dirs.*, 9 F. Supp. 3d 1245, 1253 (N.D. Ala. 2014); *Lanier v. Bd. of Trs. of the Univ. of Ala.*, No. 2:12-cv-3820-WMA, 2014 WL 657541, at *5 (N.D. Ala. Feb. 20, 2014). A "but-for" cause can be made out using circumstantial evidence. Many other courts have applied *Nassar* to the causal connection requirement of the *McDonnell-Douglas* prima facie case. *See, e.g.*, *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015); *Musolf v. J.C. Penney Co.*, 773 F.3d 916, 919 (8th Cir. 2014); *Verma v. Univ. of Penn.*, 533 F. App'x 115, 119 (3d Cir. 2013); *Conner v. Ass'n of Flight Attendants-CWA*, No. 13-2464, 2014 WL 6973298, at *3 (E.D. Pa. Dec. 10, 2014); *Lindquist v. Tanner*, No. 2:11-3181-RMG, 2013 WL 4441946, at *5 (D.S.C. Aug. 15, 2013).

This court does not comprehend the Fourth Circuit's contention that applying *Nassar*'s but-for causation requirement to the prima facie case would "be tantamount to eliminating the *McDonnell-Douglas* framework." *Foster*, 2015 WL 2405266, at *5. This makes no sense. Plaintiffs have long been able to prove their cases using that framework. The court sees no reason why *Nassar*'s heightened causation standard would somehow eliminate the burden-shifting standard if applied at the prima facie stage. *Nassar* does in fact

9

make proving retaliation claims more difficult, but this was the Court's explicit intent — it was concerned that "claims of retaliation are being made with ever-increasing frequency," and the Court thereupon found that reducing such claims will "have central importance to the fair and responsible allocation of resources in the judicial and litigation systems," *Nassar*, 133 S. Ct. at 2531. There is nothing incongruous or illogical, then, in requiring plaintiffs to meet the causation requirement either at the outset (through the prima facie case) or not at all. In fact, such a result furthers the aims the *Nassar* Court sought to achieve.

The Fourth Circuit's holding that *Nassar* only applies to claims brought under the direct evidence method, which the Fourth Circuit acknowledged to be "the rare case," *Foster*, 2015 WL 2405266, at *4 n.6, is completely contrary to the holding and intent of *Nassar*. Accordingly, Donald's first argument, that her race discrimination and retaliation claims may co-exist, fails, and her retaliation claim is subject to dismissal unless she wants to pursue it as the but-for cause of her termination.

Donald's argument with respect to her hostile work environment claim is well-taken. Her hostile work environment claim is actionable without the environment having led to disciplinary action. It is an entirely separate proscribed adverse employment action. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004). It does not conflict with the retaliation claim.

Donald, therefore, need not dismiss her hostile work environment claim, and it will survive the implicit Rule 12(b)(6) challenge.

### CONCLUSION

For the reasons stated above, Donald's retaliation claim will be dismissed unless, by **July 6, 2015**, she amends her retaliation claim to allege but-for causation and dismisses her race discrimination claim.

DONE this 29th day of June, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE